# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | |
|---|---|
| JPMBB 2014-C22 NORTH LAUREL PARK DRIVE, LLC, a Delaware limited liability company, | )<br>)<br>)<br>) |
| Plaintiff, | )<br>) No. |
| v. | )<br>) Hon. |
| NEWBURGH/SIX MILE LIMITED PARTNERSHIP II, a Michigan limited partnership, | )<br>)<br>)<br>) |
| Defendant. | )<br>)<br>) |

## VERIFIED COMPLAINT FOR ENFORCEMENT OF MORTGAGE, INCLUDING ASSIGNMENT OF RENTS, APPOINTMENT OF RECEIVER AND OTHER RELIEF

Plaintiff JPMBB 2014-C22 North Laurel Park Drive, LLC ("Lender" or "Plaintiff"), by its attorneys, Dentons US LLP and Foley & Lardner LLP, for its verified complaint (*see* Verification of Dmitry Sulsky, attached as Exhibit A), alleges:

## PARTIES

1. Plaintiff is a limited liability company organized and existing under the laws of Delaware. The sole member of Plaintiff is Wilmington Trust, National Association, as Trustee for the Benefit of the Registered Holders of JPMBB

Commercial Mortgage Securities Trust 2014-C22, Commercial Mortgage Pass-Through Certificates, Series 2014 C22 ("Wilmington Trust"). Wilmington Trust's principal place of business is located in Wilmington, Delaware, and Wilmington Trust is therefore a citizen of Delaware.

2. Defendant Newburgh/Six Mile Limited Partnership II ("Borrower") is a Michigan limited partnership and is the mortgagor of the property commonly known as Laurel Park Place, 17370-17390 North Laurel Park Drive, Livonia, MI 48152 (the "Property"). Borrower's partners are (i) Six Mile/Newburgh Venture II, Inc.; (ii) SF Properties, LLC; and (iii) Robert S. Sher.

3. Six Mile/Newburgh Venture II, Inc. is a Michigan corporation with is principal place of business at 17800 Laurel Park Drive North, Suite 200C, Livonia, Michigan.

4. SF Properties, LLC is a Michigan limited liability company with its principal place of business at 17800 Laurel Park Drive North, Suite 200C, Livonia, Michigan. The members of SF Properties, LLC are (i) David W Schostak Trust; (ii) Robert I Schostak Trust; (iii) Mark S Schostak Trust; (iv) Brothers Four, LLC; (v) Schostak Associates, LLC; (vi) David W Schostak Irrevocable Trust; (vii) Robert I Schostak Irrevocable Trust; and (viii) Mark S Schostak Irrevocable Trust. Upon information and belief and as represented by Borrower, the trustees of the David W Schostak Trust, Robert I Schostak Trust, Mark S Schostak Trust, David W Schostak

Irrevocable Trust, Robert I Schostak Irrevocable Trust, and Mark S Schostak Irrevocable Trust, are Michigan citizens or citizens of a state other than the Delaware. The members of Brothers Four, LLC are (i) David W Schostak Trust, (ii) Robert I Schostak Trust, and (iii) Mark S Schostak Trust. The members of Schostak Associates, LLC are (i) RIS Descendants Trust; (ii) DWS Descendants Trust; (iii) MSS Descendants Trust; (iv) Michael L Schostak Trust; (v) Jody Rappaport Trust; and (vi) other individuals who are children of David W Schostak, Robert I Schostak and Mark S Schostak. Upon information and belief and as represented by Borrower, the trustees of the RIS Descendants Trust, DWS Descendants Trust, MSS Descendants Trust, Michael L Schostak Trust, and Jody Rappaport Trust and such other individuals who are children of David W Schostak, Robert I Schostak and Mark S Schostak are Michigan citizens or citizens of a state other than the Delaware.

5. Robert S. Sher is a Michigan citizen or a citizen of a state other than Delaware.

6. Non-party LNR Partners, LLC ("LNR") is the special servicer of the Loan (as defined below) to Borrower. LNR is also the non-member manager of Plaintiff.

**JURISDICTION AND VENUE**

7. The Court has jurisdiction over this matter under 28 U.S.C. § 1332(a), because the amount in controversy exceeds $75,000, exclusive of interest and costs,

3

and because, as demonstrated above, the parties are citizens of different states. Additionally, Plaintiff seeks equitable relief in the form of a receiver and for injunctive relief.

8. Venue is proper in this Court under 28 U.S.C. § 1391 because the subject matter of this Complaint is situated in this District. Plaintiff requests the appointment of a receiver to operate the commercial property located at 17370-17390 North Laurel Park Drive, Livonia, Michigan 48152, as more particularly described in Exhibit B, on which Plaintiff holds a mortgage and including the Personal Property (as defined below) located thereon (the "Property").

## GENERAL ALLEGATIONS

### The Loan

9. On or about July 9, 2014, JPMorgan Chase Bank, National Association, a banking association ("JPMorgan Chase" or "Original Lender") made a loan to Borrower in the amount of $28,000,000 (the "Loan").

10. The Loan is evidenced by a promissory note and is secured by a mortgage on the Property.

11. Borrower has defaulted on its obligations under the note, mortgage and other loan documents evidencing and/or securing the Loan.

12. This is an action to, among other things, enforce the covenants in the parties' contracts and to appoint a receiver with respect to the Property.

4

13. Borrower consented in the mortgage to the *ex parte* appointment of a receiver by the Court in the event of default. The Mortgage (as defined below) states in relevant part as follows:

> Upon the occurrence and during the continuance of any Event of Default, Borrower agrees that Lender May take such action, without notice or demand, as it deems advisable to protect and enforce its rights against Borrower and in and to the Property, including, but not limited to, . . . ***apply for the appointment of a receiver***, trustee, liquidator or conservator of the Property, ***without notice*** and without regard for the adequacy of the security for the Debt and without regard for the solvency of Borrower, any Guarantor, Indemnifying Person with respect to the Loan or of any Person liable for the payment of the Debt.

Ex. D, Sec. 7.1(g) (emphasis added).

**The Mortgage**

14. Borrower's indebtedness under the Loan is evidenced by that certain Promissory Note dated July 9, 2014 (the "Note"). The Loan and Note are governed by that certain Loan Agreement dated July 9, 2014 (the "Loan Agreement"). A copy of the Note and Loan Agreement are attached as group Exhibit C.

15. To secure repayment of the indebtedness evidenced in the Note and performance of all covenants and conditions contained therein, Borrower also executed a Mortgage dated July 9, 2014 (the "Mortgage") in the amount of $28,000,000.00 in favor of Original Lender, which was duly recorded in the Office of the Register of Deeds for the County of Wayne, Michigan on July 11, 2014, as

5

Instrument Number 2014302764, Liber 51630, Page 830. A copy of the Mortgage is attached as <u>Exhibit D</u>.

16. Borrower also assigned to Original Lender all of Borrower's right, title, and interest in and to all rents, issues, and profits that may arise or be had from the Property, and other property rights, interests, and estates as more particularly set out in the Mortgage.

17. The Mortgage further states:

> Borrower hereby absolutely and unconditionally assigns to Lender all of Borrower's right, title and interest in and to all current and future Leases and Rents; it being intended by Borrower that this assignment constitutes a present, absolute assignment and not an assignment for additional security only. . . The collection of Rents by Lender shall in no way waive the right of Lender to foreclose this Mortgage upon the occurrence of an Event of Default.

Ex. D, Sec. 1.2.

18. The Mortgage also grants a security interest in:

> all furniture, furnishings, objects of art, machinery, goods, tools, supplies, appliances, general intangibles, contract rights, accounts, accounts receivable, franchises, licenses, certificates and permits, and all other personal property of any kind or character whatsoever as defined in and subject to the provisions of the Uniform Commercial Code, whether tangible or intangible, other than Fixtures, which are now or hereafter owned by Borrower and which are located within or about the Land and the Improvements, together with all accessories, replacements and substitutions thereto or therefor and the proceeds thereof (the "<u>Personal Property</u>").

(Ex. D, Sec. 1.1(g).)

19. Such security interest has been perfected by the Financing Statement naming Borrower as debtor and Original Lender as secured party, as recorded in the Office of the Register of Deeds for the County of Wayne, Michigan on July 11, 2014, Instrument Number 2014302765, Liber 51630, Page 856 (the "County Financing Statement"). The County Financing Statement was continued pursuant to those Financing Statement Amendments recorded with the Office of the Register of Deeds for the County of Wayne, Michigan on March 25, 2019, Instrument Number 2019107714, Liber 54947, Page 769, and recorded on March 14, 2024, Instrument Number 2024066612, Liber 58736, Page 733 (collectively, "County Continuation Statements"). The County Financing Statement was assigned to Wilmington Trust pursuant to that Financing Statement Amendment recorded with the Office of the Register of Deeds for the County of Wayne, Michigan on October 2, 2014, Instrument Number 2014404325, Liber 51785, Page 523 (the "First Assignment of County Financing Statement"). The County Financing Statement was then fully assigned to Plaintiff pursuant to that Financing Statement Amendment recorded with the Office of the Register of Deeds for the County of Wayne, Michigan on April 1, 2025, as Instrument Number 2025126385, Liber 59460, Page 515 (the "Second Assignment County Financing Statement"). A copy of the County Financing Statement, the County Continuation Statements, the First Assignment of County

7

Financing Statement, and the Second Assignment of County Financing Statement (collectively, "County UCC Documents") are attached as group Exhibit E.

20. The security interest in the Personal Property was also perfected by the Financing Statement naming Borrower as debtor and Original Lender as secured party, as filed with the Michigan Department of State on July 10, 2014, Instrument Number 2014101334-0 (the "State Financing Statement"). The State Financing Statement was continued pursuant to those Financing Statement Amendments filed with the Michigan Department of State on March 26, 2019, Instrument Number 20190327000623-1, and filed on March 18, 2024, Instrument Number 20240318000526-3 (collectively, "State Continuation Statements"). The State Financing Statement was assigned to Wilmington Trust pursuant to that Financing Statement Amendment filed with the Michigan Department of State on November 24, 2014, Instrument Number 2014168433-9 (the "First Assignment of State Financing Statement"). The State Financing Statement was then fully assigned to Plaintiff pursuant to that Financing Statement Amendment filed with the Michigan Department of State on April 1, 2025, as Filing Number SR36987 (the "Second Assignment State Financing Statement"). A copy of the State Financing Statement, the State Continuation Statements, the First Assignment of State Financing Statement, and the Second Assignment of State Financing Statement (collectively "State UCC Documents") are attached as group Exhibit F.

8

21. Original Lender assigned its interest in the Note and Loan to Wilmington Trust. Original Lender endorsed the Note to Wilmington Trust ("First Allonge"). Original Lender transferred its right, title, and interest in and to the Loan and all other agreements, certificates and documents entered into or delivered in connection with the Loan to Wilmington Trust pursuant to that certain General Assignment dated as of August 22, 2014 ("General Assignment to Wilmington Trust").

22. The Mortgage was assigned by Original Lender to Wilmington Trust pursuant to that certain Assignment of Mortgage, effective as of August 22, 2014, recorded in the Office of the Register of Deeds for the County of Wayne, Michigan on October 2, 2014, as Instrument Number 2014404324, Liber 51785, Page 518, (the "Mortgage Assignment to Wilmington Trust" collectively with First Allonge, and General Assignment to Wilmington Trust, the "Assignments to Wilmington Trust"). Copies of the Assignments to Wilmington Trust are attached as group Exhibit G.

23. Wilmington Trust assigned its interest in the Loan and the Loan Documents to Plaintiff. Wilmington Trust endorsed the Note to Plaintiff ("Second Allonge"). Wilmington Trust transferred its right, title, and interest in and to the Loan and all documents and instruments executed and/or delivered in connection therewith or related thereto to Plaintiff pursuant to that certain Omnibus Assignment

of Loan Documents dated as of March 13, 2025 ("Omnibus Assignment to Plaintiff").

24. The Mortgage was assigned by Wilmington Trust to Plaintiff pursuant to that certain Assignment of Mortgage, dated as of March 13, 2025, recorded in the Office of the Register of Deeds for the County of Wayne, Michigan on March 25, 2025, as Instrument Number 2025107125 Liber 59438, Page 1451, (the "Mortgage Assignment to Plaintiff" collectively with Second Allonge, and Omnibus Assignment to Plaintiff, the "Assignments to Plaintiff"). Copies of the Assignments to Plaintiff are attached as group Exhibit H.

25. Hereinafter, the Mortgage, Note, Loan Agreement, County UCC Documents, State UCC Documents, and Assignments to Plaintiff are referred to collectively, where appropriate, as the "Loan Documents."

**Borrower's Default Under the Loan Documents**

26. Under the terms of the Note, Borrower agreed to pay the outstanding balance of the principal sum of this Note and all accrued and unpaid interest thereon on August 1, 2024 (the "Maturity Date"). (Loan Agmt, §§ 2.3.3, 8.1(a)(i)).

27. Under the terms of the Loan Documents, an Event of Default occurs if Borrower fails to pay any portion of the Debt, as that term is defined in the Loan Agreement, on the date it is due.

28. Borrower has defaulted under the Loan Documents, by among other defaults, failing to pay all amounts due under the Note and Mortgage on or prior to the Maturity Date.

29. On March 3, 2025, counsel for Wilmington Trust sent a Notice of Default and Demand ("<u>Notice of Default</u>") to Borrower informing Borrower an Event of Default occurred due to Borrower's failure to make all required payments under the Loan Documents. A copy of the Notice of Default is attached as <u>Exhibit I</u>.

30. The unpaid principal balance as of June 26, 2025 is approximately $21,908,675.31 and note rate interest has accrued on said unpaid principal in the amount of $1,102,335 through June 26, 2025 and default rate interest has accrued on said unpaid principal in the amount of $1,001,104.75 through June 26, 2025. The total amount due as principal and interest, along with reserves, late fees, and other charges, June 26, 2025 is $24,778,789.10, subject to any setoffs for reserve funds. In addition, Borrower is liable for attorneys' fees and costs.

31. Pursuant to the Mortgage, Borrower's license to collect rents terminated on the Maturity Date. The Mortgage states in relevant part:

> Upon the occurrence and during the continuance of any Event of Default, Borrower agrees that . . . ***the license granted to Borrower under Section 1.2 hereof shall automatically be revoked*** and Lender may enter into or upon the Property, either personally or by its agents, nominees or attorneys and dispossess Borrower and its

11

> agents and servants therefrom, without liability for trespass, damages or otherwise and exclude Borrower and its agents or servants wholly therefrom, and take possession of all books, records and accounts relating thereto and Borrower agrees to surrender possession of the Property and of such books, records, and accounts to Lender upon demand.

Ex. D, Sec. 7.1(h) (emphasis added).

32. Borrower expressly consented in the Mortgage to the appointment of a receiver upon an Event of Default, which is defined in the Loan Agreement to include when "any portion of the Debt is not paid when due" (Ex. C, Sec. 8.1(a)(i)).

33. In particular, Section 7.1 of the Mortgage states, in relevant part, that Borrower irrevocably consented to the appointment of a receiver in the circumstances present here:

> Upon occurrence and during the continuance of any Event of Default, Borrower agrees that Lender may take such action, without notice or demand, as it deems advisable to protect and enforce its rights against Borrower and in and to the Property, including, but not limited to . . . ***apply[ing] for the appointment of a receiver***.

Ex. D, Sec. 7.1(g) (emphasis added).

34. Borrower has failed to make payments as required by the Loan Documents and, therefore, is in default of the Note and the Mortgage.

**Plaintiff's Damages**

35. Because Borrower has failed and refused to fulfill its obligations under the Loan Documents, Plaintiff is concerned that Borrower will fail to maintain the Property securing its obligations to Plaintiff.

36. The Property consists of a multi-tenant office building and theatre, and, given Borrower's default under the Loan Documents, Plaintiff is justifiably concerned that the Property is not being adequately managed and maintained, which may harm the tenants of the Property.

37. Moreover, there are serious issues with respect to Borrower withholding income from the Property that rightfully should have been paid to Plaintiff. Despite demands that the rent should be turned over to it, the Borrower and/or its agents have refused to do so. This demonstrates that Plaintiff's interest in the collateral continues to be diminished and requires the immediate need of a receiver to protect Plaintiff's mortgagee interests.

38. Plaintiff is entitled to the appointment of a receiver to, among other things, safeguard and preserve its rents and profits derived from the Property, and use such to preserve and maintain its collateral consistent with the Loan Documents.

39. If a receiver is not appointed, Plaintiff's right to recover income from the Property and to presently enforce the Mortgage covenants will be forever lost. It is inequitable to allow Borrower to collect and divert revenues from the Property

that it is contractually obligated to pay to Plaintiff when it has failed to fulfill its obligations under the Loan Documents.

40. Upon information and belief, the tenant rents for the Property are due monthly.

41. Plaintiff will suffer immediate and irreparable loss unless a receiver is appointed because it cannot otherwise preserve and protect its collateral and enforce the covenants in the Mortgage.

**COUNT I – BREACH OF CONTRACT, ENFORCEMENT OF MORTGAGE (INCLUDING ASSIGNMENT OF RENTS, AND APPOINTMENT OF RECEIVER)**

42. Plaintiff incorporates the preceding allegations as though fully set forth herein.

43. The Mortgage provides at Section 7.1 that in the event of default, Plaintiff can apply to a court for the appointment of a receiver of the Property to collect rents and profits and preserve the value of the Property.

44. As demonstrated above, Borrower granted Plaintiff the <u>strict right</u> to the appointment of a receiver in the event it defaulted on its obligations under the Loan Documents.

45. Borrower is in default of and has breached one or more of the covenants in the Loan Documents.

14

46. Prior to filing this Complaint, and by its action in this case, Plaintiff has demanded that Borrower agree to the appointment of a receiver for the Property.

47. Borrower has consent to entry of the order appointing a receiver as evidenced by Borrower's stipulation that is filed simultaneously with this complaint.

48. As further grounds for the appointment of a receiver, Plaintiff is also entitled to appointment of a receiver under Michigan's Uniform Assignment of Rents Act, M.C.L. § 554.1051 et seq. ("MUARA"), and particularly, M.C.L. § 554.1057, which provides that Plaintiff "is entitled to the appointment of a receiver" when a borrower is in default and has agreed in a signed document to the appointment of a receiver upon borrower's default, among other bases for appointment. Plaintiff is also entitled to the appointment of a receiver under Michigan's Uniform Commercial Real Estate Receivership Act, M.C.L. § 554.1011 *et seq.*, and particularly, M.C.L. § 554.1016.

49. Furthermore, unless a receiver is appointed immediately by this Court to take possession and control of the Property (which is collateral for a loan with an unpaid principal balance of $21,908,675.31), Plaintiff will have no effective and/or efficient means to enforce the covenants and the assignment of rents and leases provisions of the Mortgage and/or to insure that taxes, insurance, utilities and other expenses for the Property are properly paid.

50. Plaintiff will suffer immediate and irreparable loss unless a receiver is appointed because it cannot otherwise preserve and protect its collateral and enforce the covenants in the Mortgage.

51. Plaintiff seeks relief as set forth herein.

## COUNT II – INJUNCTIVE RELIEF

52. Plaintiff incorporates the preceding allegations as though fully set forth herein.

53. Upon information and belief, Borrower and/or its agent are in complete control of the Property.

54. Borrower's failure to fulfill its obligations to Plaintiff is a breach of the terms of the Loan Documents.

55. The entry of a preliminary injunction is necessary to protect and preserve Plaintiff's interest in the Property (as well as the revenues, profits and income from the Property), and the personal property on which it has a lien, and to permit it to enforce its rights under the Loan Documents.  Furthermore, entry of a preliminary injunction is necessary in order to avoid irreparable harm and waste to the Property.

56. Plaintiff is likely to succeed on the merits of its claims against Borrower.

57. Plaintiff will suffer irreparable injury in the absence of a temporary restraining order and preliminary injunction that enjoins Borrower from transferring, disposing of, or concealing any part of the collateral, and turns over control of the Property to a receiver who will take the necessary steps to maintain it and its operations.

58. The balance of hardships and the public interest favor issuing a temporary restraining order and preliminary injunction in this case.

59. Plaintiff seeks relief as set forth below.

## REQUESTED RELIEF

WHEREFORE, Plaintiff respectfully requests the following relief:

a. A Judgment in favor of Plaintiff and against Borrower on Counts I and II;

b. Entry of a preliminary injunction against Borrower and its agents, employees and members (as well as any other persons with knowledge of this Court's order) barring them from transferring, expending, distributing, concealing, destroying, damaging or otherwise diminishing the Property or any part thereof or any personal property on which Plaintiff has a lien, or any proceeds of the same, including rents, profits and revenues, until a receiver is appointed;

c. An order appointing NAI Farbman through its authorized agent Andy Gutman, as the receiver of the Property during the pendency of this action to take charge of the Property, to operate, manage, and conserve the Property, to collect rents, issues, and profits, to find tenants and lease the premises, to insure the Property against loss by fire or otherwise, to make necessary repairs to the Property, to pay the taxes that have been, or may be, levied against the Property, to market the property for sale,

      and to have and perform all the other usual powers and duties of a receiver in similar cases;

d.     An order requiring all persons who have possession or control of the Property (other than lawful tenants) to yield and deliver possession of same to the receiver appointed by this Court.

Dated: June 23, 2025                          Respectfully submitted,

/s/ *Andrew T. McClain*
Andrew T. McClain (P79610)
DENTONS US LLP
233 S. Wacker Drive, Suite 5900
Chicago, IL 60606
Telephone (312) 876-800
Facsimile (312) 876-7934
andrew.mcclain@dentons.com

-and-

Ann Marie Uetz (P48922)
FOLEY & LARDNER LLP
500 Woodward Avenue, Suite 2700
Detroit, MI 48226
(313) 234-7175
auetz@foley.com

*Attorney for Plaintiff*